ELI McDONALD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21042. Promulgated May 29, 1931.

*William S. Hammers, Esq.*, for the petitioner.
*A. H. Murray, Esq.*, for the respondent.

OPINION.

McMahon: The evidence discloses that the petitioner was adjudicated a bankrupt on April 13, 1923; that the representative of the respondent, the Collector of Internal Revenue at Jacksonville, Fla., filed with the referee in bankruptcy a proof of taxes and interest due for the year 1921 in the amount of $161.78; that the full amount of the claim was paid by the referee on April 7, 1924; that the petitioner was discharged in bankruptcy on March 4, 1924; and that thereafter the respondent determined that an additional tax was due from the petitioner for the year 1921, and assessed an additional tax in the amount of $4,350.31. The first question raised by the petitioner is whether, under these circumstances, the respondent may, under the law, proceed to collect any additional tax for the year 1921.

The Act of Congress of January 7, 1922 (42 Stat. 354), amending the Act of July 1, 1898, as amended by the Acts of February 5, 1903, and March 2, 1917, provides:

SEC. 17. DEBTS NOT AFFECTED BY A DISCHARGE.—A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as (first) are due as a tax levied by the United States, the State, county, district, or municipality in which he resides; * * *

Despite the above statute, the petitioner contends that the discharge in bankruptcy relieved him from the payment of any additional tax for the year 1921. The petitioner further contends that since the bankruptcy court has jurisdiction to determine the legality of claims of the United States for taxes and the amount of taxes due, and, since, in the instant proceeding, the respondent's claim for taxes for 1921 was approved by the court and paid in full, the whole matter of taxes for 1921 is *res judicata*.

We consider the decision in *Friend* v. *Talcott*, 228 U. S. 27, a complete answer, in the negative, to the contention of the petitioner. Therein it was held that where a creditor, after unsuccessfully opposing a composition and a discharge in bankruptcy on the ground

of fraud in creating the debt, accepted the dividend and then sued for the balance on the ground that the debt was excepted from the discharge, there was no waiver of the right to sue on the tort by accepting the dividend and that the granting of the discharge was not *res judicata* of the claim for the balance of the debt. In the course of its opinion, the court stated in part:

* * * This being the case it is urged that an election and waiver resulted from the act of the debtor in proving his claim as on contract and thus taking advantage of the bankruptcy proceedings and thereby obtaining rights or benefits which he would not have had if he had stayed out and thus saved his right to be freed from the operation of the discharge. But this distinction is also wholly without foundation. Its error lies in assuming that the right which the bankrupt act confers upon enumerated classes of debts to be exempt from the operation of a discharge rests upon the conception that such debts are exempt because they are excluded from the act and may not participate in the distribution of assets. That is to say, the confusion lies in not distinguishing between creditors who are excluded from the bankrupt act and those who although included therein have had conferred upon them the benefit of an exception from the operation of the discharge. Even a superficial analysis of the text of the Bankruptcy Act will make this clear. Thus § 63a and b (30 Stat. 562) enumerates the debts which may be proved and which are therefore entitled to participate in the benefits of the act and are bound by its provisions, including a discharge. Section 17 (30 Stat. 550) enumerates the debts not affected by a discharge, that is, those exempted from its operation. It is apparent that the exemptions do not rest upon any theory of the exclusion of the creditor from the bankrupt act or of deprivation of right to participate in the distribution, but solely on the ground that although such rights are enjoyed, an exemption from the effect of the discharge is superadded. The text leaves no room for any other view, since the exceptions in terms are accorded to certain classes of debts which are provable under § 63, and therefore debts which are entitled to participate in the distribution, the language being: "A discharge in bankruptcy shall release a bankrupt from all of his *provable* debts, except such as," etc.

\* \* \* \* \* \* \* \*

While the considerations just stated dispose of the question of waiver and election, they virtually also serve to indicate the error which underlies the contention as to *res judicata*, that is, a confusion of thought arising from treating things which are different as one and the same. To constitute *res judicata*, it is elementary that there must be identity of cause between the two cases. In view of the text of the bankrupt law, the distinction which it makes between the general discharge and the right of a particular creditor to be exempt from the operation of such discharge it needs but statement to demonstrate the difference of cause which necessarily obtains between determining on the one hand in favor of the bankrupt whether he is entitled to a general discharge and of deciding on the other, as between a particular creditor and the bankrupt, whether the claim of that creditor is of such a character as to be exempt from the operation of a discharge. Nothing could more clearly emphasize the distinction which exists between the two subjects—that is, the granting of a general discharge and the question after it is granted whether a particular debt is exempted by law from its operation—than does the provision of the statute (§ 14c, 30 Stat. 550) authorizing a general discharge as the result of an approval of a composition, since it expressly reserves from the operation of such discharge of the bankrupt from his debts, "those not affected by a discharge." * * *

We therefore hold that the discharge in bankruptcy does not bar assessment and collection of any additional tax which may be due from the petitioner for the year 1921. As a consequence it becomes necessary to decide whether the respondent erred in his determination of the additional tax, as alleged by the petitioner.

On or about July 5, 1921, the petitioner transferred to Benjamin I. Powell his half interest in the Wayne Building in exchange for $10,000 cash and Powell's stock in the Dade Furniture Company which had a par value of $32,000. The respondent attributed a book value of $22,800 to the stock and computed a profit of $22,800 to the petitioner on the exchange. The petitioner contends that the stock had no readily realizable market value at the time it was received by him and that no gain was derived from the transaction.

Section 202 (e) of the Revenue Act of 1921 provides in part:

Where property is exchanged for other property which has no readily realizable market value, together with money or other property which has a readily realizable market value, then the money or the fair market value of the property having such readily realizable market value received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchange, and if in excess of such basis, shall be taxable to the extent of the excess; * * *

The petitioner testified that the Dade Furniture Company in 1921 was losing money and that the reason he wished to obtain the stock owned by Powell was to gain control of the company and attempt to put the company upon a profitable basis. He testified that at the time he obtained the stock from Powell he considered it worthless and that he could not have sold it in the market. This means, as we view his testimony, that it had no readily realizable market value. In this respect the case is somewhat similar to *Mechanics Bank & Trust Co.*, 18 B. T. A. 237, where the Board construed testimony to the effect that " There was no marketable value " to be equivalent to saying that there was " no readily realizable market value." The other evidence in the instant proceeding sustains petitioner's claim that the stock had no readily realizable market value. There is no competent evidence in the record to show the exact financial condition of the Dade Furniture Company at or about the date of the exchange, but the evidence does show that on November 4, 1922, the Circuit Court of Dade County, Florida, appointed a receiver for the Dade Furniture Company, the name of which had been changed to the McDonald Furniture Company, and that the assets of the company were sold and the proceeds distributed to the creditors of the company. The creditors received only about 50 per cent of their claims and there were no assets left for distribution to the stockholders of the company. From the evidence we are forced to the

conclusion that the respondent erred in attributing any value to the stock in question in the computation of the gain derived or loss sustained upon the exchange. There is no evidence in the record as to the correctness of the basis used by the respondent in the determination of gain or loss and no question was raised as to this factor. Both the petitioner and the respondent in their computations have used $10,000 as the cost to petitioner of his half interest in the Wayne Building. No question having been raised as to the basis, we assume that it is correct and hold that petitioner derived no gain upon the transaction.

No evidence whatsoever was introduced as to the claimed deduction of $1,950 for the use of an automobile, and the respondent's disallowance thereof is approved.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

MURDOCK, dissenting: The Board heretofore decided in this case that it had no jurisdiction because the alleged deficiency notice was not a deficiency notice within the meaning of section 274 of the Revenue Act of 1924. The Court of Appeals of the District of Columbia reversed the Board on this point and remanded the case. It thereafter developed that the petitioner was adjudicated a bankrupt on April 13, 1923. The taxes are for the year 1921. Section 282 (a) of the Revenue Act of 1926 applies. This question was not presented to the Court of Appeals, and in my opinion, we should hold that we have no jurisdiction because section 282 (a) provides that no petition for redetermination shall be filed with the Board after the adjudication of bankruptcy or the appointment of a receiver. Cf. *Plains Buying & Selling Association*, 5 B. T. A. 1147.